UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x
THOMAS GESUALDI, LOUIS BISIGNANO, MICHAEL :
O'TOOLE, MICHAEL C. BOURGAL, DARIN JEFFERS, :
FRANK H. FINKEL, MARC HERBST, THOMAS F. :
CORBETT, ROBERT G. WESSELS AND ROCCO :
TOMASSETTI SR. AS TRUSTEES AND FIDUCIARIES OF :
THE LOCAL 282 WELFARE TRUST FUND, THE LOCAL :
282 PENSION TRUST FUND, THE LOCAL 282 ANNUITY :
TRUST FUND, THE LOCAL 282 JOB TRAINING FUND, :  **REPORT AND**
AND THE LOCAL 282 VACATION AND SICK LEAVE :  **RECOMMENDATION**
TRUST FUND, :
:  23-CV-7529 (OEM)(PK)
Plaintiffs, :
:
- against - :
:
BLACKRIDGE CONSTRUCTION, LLC a/k/a :
BLACKRIDGE CONSTRUCTION LLC., :
:
Defendant. :
------------------------------------------------------------------------ x

**Peggy Kuo, United States Magistrate Judge:**

Plaintiffs Thomas Gesualdi, Louis Bisignano, Michael O'Toole, Michael Bourgal, Darin Jeffers, Frank Finkel, Marc Herbst, Thomas Corbett, Robert Wessels, and Rocco Tomassetti, Sr., as Trustees and fiduciaries of the Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds (collectively, the "Funds"), bring this action against Blackridge Construction, LLC a/k/a Blackridge Construction LLC ("Blackridge" or "Defendant") for injunctive and monetary relief under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(3) and 1145. (Compl., Dkt. 1.) Plaintiffs have moved for default judgment against Defendant. ("Motion," Dkt. 13.) The Honorable Orelia E. Merchant referred the Motion to me for a report and recommendation. (Feb. 28, 2025 Order.) For the reasons stated below, I respectfully recommend that the Motion be granted.

**BACKGROUND**

**I. Factual Background**

Unless otherwise specified, the following facts are taken from the Complaint, the Declaration of Joseph Puccio ("Puccio Decl.," Dkt. 13-10), and the exhibits submitted with the Motion. These facts are accepted as true for purposes of the Motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *see also Baez v. Mi Pueblo Corp.*, No. 23-CV-2097 (RER)(MMH), 2024 WL 4093473, at *1 (E.D.N.Y. Sept. 5, 2024) (assuming true the allegations in plaintiff's declaration for purposes of default judgment (citing *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015)), *R&R adopted*, 2024 WL 4648138 (E.D.N.Y. Sept. 30, 2024).

The Funds are employee benefit plans (Compl. ¶ 1), and Plaintiffs "have discretion and control over the assets and administration of the Funds" (*id.* ¶ 6). The Funds are governed by the Restated Agreement and Declaration of Trust ("Trust Agreement," Dkt. 13-11).

Blackridge is a New York corporation that entered into collective bargaining agreements with Local 282 of the International Brotherhood of Teamsters (the "Union"), which specify that Blackridge is bound to the Metropolitan Trucker's Association and Independent Trucker's Contracts with the Union for the periods of July 1, 2016 through June 30, 2020 (the "2020 CBA," Dkt. 13-12), October 1, 2020 through June 30, 2023 (the "2023 CBA," Dkt. 13-13), and July 1, 2023 through June 30, 2028 (the "2028 CBA," Dkt. 13-14; together with the 2020 CBA and the 2023 CBA, the "CBAs"). (Puccio Decl. ¶ 13; *see* Compl. ¶ 14.) The CBAs incorporate the Trust Agreement. (2020 CBA § 13(G); 2023 CBA § 13(G); 2028 CBA § 13(G).)

The CBAs require, *inter alia*, that Blackridge "submit remittance reports" and "make contributions to the Funds on behalf of its employees who are covered by the CBAs." (Compl. ¶¶ 15–17; *see* 2020 CBA § 13; 2023 CBA § 13; 2028 CBA § 13; Trust Agmt. Art. IX, § 1(c).) Payments are due sixty days after the close of each calendar month. (2020 CBA § 13(F); 2023 CBA § 13(F);

2028 CBA § 13(F).)  The Trust Agreement specifies that the "Trustees may at any time audit the pertinent books and records of any Employer" in connection with their submission of reports and remittance of contributions.  (Trust Agmt. Art. IX, § 1.)

The Trust Agreement provides that if an employer fails to remit contributions when due and remains in default for five working days, the employer will be liable for interest at 1.5% per month on the unpaid amount, attorneys' fees, auditors' fees, and liquidated damages in the amount that is the greater of the "interest charged on the unpaid contributions" or "20 percent of the unpaid contributions."  (Trust Agmt. Art. IX, § 3.)

Plaintiffs contend that Blackridge, despite submitting remittance reports, failed to remit contributions "for various months between May 2022 and October 2024."  (Puccio Decl. ¶ 20; *see* "Remittance Reports," Ex. E to Puccio Decl., Dkt. 13-15.)  Plaintiffs contend further that Blackridge made late payments of contributions from August 2020 through May 2024.  (Puccio Decl. ¶ 21; *see* "Damage Calculations" or "Damage Calcs.," Dkt. 15-1.)

## II. Relevant Procedural Background

Plaintiffs filed the Complaint on October 9, 2023.  The following day, Plaintiffs filed a suggestion of bankruptcy indicating that the Defendant had filed for bankruptcy protection (Dkt. 6), which resulted in an automatic stay of the case.  On February 3, 2025, Plaintiffs requested that the Court lift the stay because the bankruptcy court had dismissed Blackridge's case.  (Dkt. 8; *see* Order Dismissing Chapter 11 Case, Ex. D to Decl. of Michael Adler ("Adler Decl.," Dkt. 13-3), Dkt. 13-7.)  Plaintiffs thereafter filed proof of having served Defendants with the Complaint and Summons on October 12, 2023 (Dkt. 9), and the Court lifted the stay (Feb. 4, 2025 Order).  Time to answer passed, and Defendant did not file an answer or response to the Complaint and has otherwise not appeared in this action.  Plaintiffs requested a certificate of default on February 6, 2025 (Dkt. 11), and the Clerk entered Defendant's default (Dkt. 12).

3

Plaintiffs filed the Motion on February 27, 2025. An Inquest was held on April 28, 2025, and Plaintiffs thereafter filed updated damages calculations. (*See* Damage Calcs.)

## DISCUSSION

### I. Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).

The Court may "first assure itself that it has personal jurisdiction over the defendant." *City of N.Y. v. Mickalis Pawn Shop, LLC* ("*Mickalis*"), 645 F.3d 114, 133 (2d Cir. 2011) (internal quotation omitted). Plaintiffs must demonstrate proper service of the summons and complaint, *see Advanced Cap. Com. Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH)(GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013), and establish compliance with the procedural requirements of Local Civil Rules 7.1 and 55.2.

Moreover, the Court must also determine whether Plaintiffs' "allegations establish [the defendant's] liability as a matter of law." *Finkel*, 577 F.3d at 84; *see also Mickalis*, 645 F.3d at 137. In considering a motion for default judgment, a court accepts Plaintiffs' "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor. . . ." *Finkel*, 577 F.3d at 84. A default, however, is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted,* 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established. . . ." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted,* 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II. Jurisdiction and Default

### A. *Subject Matter Jurisdiction*

The Court has original jurisdiction over Plaintiffs' ERISA claim pursuant to 29 U.S.C. § 1132(e)-(f) and 28 U.S.C. § 1331.

### B. *Personal Jurisdiction*

"[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)). New York has general jurisdiction over corporations formed under its laws and operating within the state. *Francis v. Ideal Masonry, Inc.,* No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted,* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018).

Plaintiffs properly served Defendant, a New York corporation, by delivering a copy of the Summons and Complaint to the New York Secretary of State (Dkt. 9). *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B).

### C. *Defendant's Default*

After the Clerk issued a certificate of Defendant's default (Dkt. 11), Plaintiffs served Defendant with the Motion (*see* Certificates of Service, Dkts. 13-18, 16). Defendant has not filed any response.

### III.     Procedural Compliance

As part of the Motion and in compliance with the Local Civil Rules, Plaintiffs included a Memorandum of Law in support of the Motion ("Pls. Mem.," Dkt. 13-16), *see* Loc. Civ. Rule 7.1(a)(2); a declaration showing that the Clerk has entered default (Adler Decl.), *see* Loc. Civ. Rule 44.2(a)(1); a Proposed Default Judgment Order detailing the proposed judgment to be entered ("Proposed Order" or "Prop'd Order," Dkt. 13-17), *see* Loc. Civ. Rule 55.2(a)(2); proof of having mailed the motion papers to Defendant at its last known business address (Certificate of Service, Dkt. 13-18), *see* Loc. Civ. Rule 55.2(a)(3); and a statement of damages affirmed by someone with personal knowledge (Puccio Decl.; *see also* Damage Calcs), *see* Loc. Civ. Rule 55.2(c). Thus, compliance with the Local Civil Rules is satisfied.

### IV.     Liability Under ERISA

Plan fiduciaries may bring a civil action for ERISA violations and for violations of a collective bargaining agreement. 29 U.S.C. § 1132(a)(3). ERISA applies to "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry affecting commerce; or . . . by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a). "'Commerce' means trade, traffic, commerce, transportation, or communication between any State and any place outside thereof." 29 U.S.C. § 1002(11). "Industry affecting commerce" includes businesses or industries "in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce, and includes any activity or industry 'affecting commerce' within the meaning of the [LMRA]." 29 U.S.C. § 1002(12). An employer is "any person acting directly as an employer … in relation to an employee benefit plan." 29 U.S.C. § 1002(5). An "employee benefit plan" is "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both. . . ." 29

6

U.S.C. § 1002(3). A plan fiduciary includes persons with "any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. §§ 1002(3), (37). (Compl. ¶¶ 6–9.) Blackridge is an employer engaged in "heavy construction" (*see* 2023 CBA at 2–4), which constitutes industry that affects commerce. *See Annuity, Pension, Welfare, Training & Labor Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers, Local 14-14B, AFL-CIO by Christian v. Coastal Envtl. Grp. Inc.,* 18-CV-5773 (AMD)(ST), 2019 WL 4603805, at *6 (E.D.N.Y. Sept. 5, 2019) (construction industry has interstate jurisdictional nexus), *R&R adopted*, 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019). Plaintiffs, who have "discretion and control over the assets and administration of the Funds" (Compl. ¶ 6), are plan fiduciaries pursuant to ERISA. Defendant is bound to the CBAs and to the Trust Agreement, all of which require Blackridge to submit remittance reports and remit contributions to ERISA-governed employee benefit plans; Defendant has failed to do so. (Compl. ¶¶ 7, 14–17.)

Accordingly, accepting the Complaint's factual allegations as true, I find that Plaintiffs have sufficiently established Defendant's liability under ERISA.

## V.    Relief Sought by Plaintiffs

To award damages on a default judgment, "the district court must ensure that the plaintiff has established the amount of damages to a 'reasonable certainty.'" *Hosking v. New World Mortg., Inc.,* 570 F. App'x 28, 31 (2d Cir. 2014) (*quoting Credit Lyonnais Secs. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999)). Once liability has been established, Plaintiffs must only show "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup*, 973 F.2d at 159.

7

Plaintiffs seek to recover unpaid contributions, liquidated damages and interest on unpaid and late-paid contributions, attorneys' fees and costs, and equitable relief in the form of an order requiring Defendant to submit all outstanding remittance reports and to submit to an audit. (*See* Prop'd Order.)

### A. Unpaid Contributions

In actions under § 1132 to recover unpaid contributions, as here, ERISA provides that "the court shall award the plan . . . unpaid contributions. . . ." 29 U.S.C. § 1132(g)(2); *see Gesualdi v. Reid*, 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016).

Plaintiffs seek $832,752.69 in unpaid contributions. (*See* Damages Calcs at 3.) In support of this amount, Plaintiffs have filed the Remittance Reports, which were submitted by Blackridge and which demonstrate the total amounts due per month, as well as spreadsheets of contributions that were paid late and that remain unpaid. (*Id.* at 3–5.)

Except for two calculation errors,[1] the Damages Calculations for unpaid contributions are correct. Accordingly, I respectfully recommend that Plaintiffs be awarded $838,335.44 in unpaid contributions.

### B. Liquidated Damages and Interest

As authorized by Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C), Plaintiffs request liquidated damages and interest arising from unpaid and late-paid contributions. (Pls. Mem. at 6–7; *see* Damages Calcs.)

The Trust Agreement provides that Plaintiffs are entitled to liquidated damages for unpaid and late-paid contributions in the amount of the greater of the "amount of interest charged on the unpaid contributions" or "20 percent of the unpaid contributions." (Trust Agmt. Art. IX, § 3(b)(3).)

---

[1] The amount of unpaid contributions owed is calculated by subtracting the amount paid late from the total amount due. For the month of May 2022, Plaintiffs are owed $19,163.60 ($55,537.19–36,373.59), not $13,180.85. For the month of April 2023, Plaintiffs are owed $22,370.39 ($41,458.19–19,087.80), not $22,770.39. Accordingly, Plaintiffs are owed an additional $5,582.75, bringing the total to $838,335.44.

8

The Trust Agreement provides for interest on unpaid or late-paid contributions at a rate of 1.5% per month, or 18% per year, which begins to accrue the date the payment is due. (*Id.* Art. IX, § 3.)

Plaintiffs request $218,143.11 in liquidated damages and $173,714.44 in interest on unpaid contributions. (Damages Calcs. at 3.) Plaintiffs have used correct methods to calculate the amounts owed[2] in interest and liquidated damages.

Plaintiffs have provided a spreadsheet showing that Defendant paid late a total of $1,481,320.99 in contributions in various months between August 2020 and May 2024. (*See* Damage Calcs. at 4–5.) For these late-paid contributions, Plaintiffs seek liquidated damages in the amount of $296,264.20 and interest in the amount of $31,751.65. (*Id.*; *see* Pls. Mem. at 6–7.) I find that Plaintiffs have correctly calculated the interest and liquidated damages owed on the late-paid contributions.

Accordingly, I respectfully recommend that Plaintiffs be awarded $220,807.95 in liquidated damages and $176,379.28 in interest for the unpaid contributions. I further recommend that Plaintiffs be awarded a total of $296,264.20 in liquidated damages and $31,751.65 in interest for late-paid contributions.

### C. Equitable Relief

Plaintiffs seek equitable relief in the form of an order requiring that Blackridge "submit all outstanding remittance reports" and a "mandatory injunction directing Blackridge to submit to an audit." (Pls. Mem. at 11.)

On a motion for default judgment, injunctive relief may be granted where "the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Finkel v. Universal Sec. Sys., Inc.*, No. 10-CV-4520

---

[2] To account for the errors in calculating the unpaid contributions, *see supra* note 1, these amounts are adjusted from Plaintiffs' calculations by using the correct unpaid amounts for May 2022 and April 2023.

9

(NGG)(LB), 2011 WL 5402070, at *11 (E.D.N.Y. Sept. 9, 2011) (quoting *Labarbera v. Frank J. Batchelder Transp. LLC,* No. 08-CV-3387 (SJ)(JMA), 2009 WL 240521, at *6 (E.D.N.Y. Feb. 2, 2009)), *R&R adopted*, 2011 WL 5403080 (E.D.N.Y. Nov. 4, 2011).

"In any action under [§ 1132] by a fiduciary for on behalf of" an ERISA plan, the plan may recover "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). "Such relief includes injunctions, which may be employed to compel a defendant to comply with an audit pursuant to a CBA." *Loc. 355 United Serv. Workers Union, Int'l Union of Journeymen & Allied Trades v. Aircon Enters., Inc.*, No. 18-CV-1849 (LDH)(LB), 2018 WL 9945700, at *4 (E.D.N.Y. Nov. 28, 2018), *R&R adopted* (Aug. 21, 2019); *see also Annuity, Welfare, & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Getty Contracting, LLC*, No. 18-CV-1450 (CBA), 2018 WL 7076168, at *4 (E.D.N.Y. Oct. 5, 2018) (collecting cases), *R&R adopted sub nom.* 2018 WL 7076162 (E.D.N.Y. Dec. 12, 2018). Because Plaintiffs have successfully shown liability under ERISA for unpaid and late-paid contributions, they are entitled to equitable relief, thus satisfying the first prong of the test.

To satisfy the second prong, the party seeking injunctive relief must show that it is likely to suffer "irreparable harm" or that money damages are insufficient. *See, e.g., Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Rizzo Env't Servs. Corp.*, No. 22-CV-556 (NGG)(LB), 2022 WL 1460585, at *5 (E.D.N.Y. May 9, 2022); *Finkel*, 2011 WL 5402070, at *11.

Pursuant to the Trust Agreement and the CBAs, Blackridge is required to submit monthly remittance reports along with payment of contributions. (Trust Agmt. Art. XI, § 1(c).) Moreover, the Trust Agreement and CBAs provide that Plaintiffs "may at any time audit the pertinent books and records" of Defendant. (*Id.* Art. IX, § 1(d).)

10

Plaintiffs seek "an order directing Blackridge to submit its books and records for audit for all unaudited periods, to determine the contributions due to the funds." (Pls. Mem. at 11.) The Trust Agreement provides that where an employer does not submit remittance reports, Plaintiffs can estimate the amounts due. (Trust Agmt. Art. IX, § I(e).) "Alternatively or in addition to" this remedy, Plaintiffs may seek a "mandatory injunction directing the Employer to produce its said books and records for audit." (*Id.*)

Plaintiffs "need remittance reports from [Defendant] so that accurate allocation of contributions due can be made to Blackridge's employees." (Pls. Mem. at 11.) At the Inquest, Plaintiffs stated that, without obtaining the remittance reports or the results of an audit, they are unable to attribute contributions to the correct employee who earned them, even if Defendant pays the required total contributions. (*See* Apr. 28, 2025 Min. Entry & Order.)

Plaintiffs have demonstrated that money damages are insufficient, thus satisfying the second prong necessary to obtain equitable relief. Because Plaintiffs have satisfied both requirements for injunctive relief, I respectfully recommend that Defendant be ordered to submit all outstanding remittance reports and to submit to an audit.

### D. Attorneys' Fees and Costs

Plaintiffs seek $5,358.30 in attorneys' fees and $479 in costs. (Adler Decl. ¶¶ 38, 41; Prop'd Order.)

ERISA provides for a mandatory award of reasonable attorneys' fees and costs if a plan is awarded judgment for delinquent contributions of an employer. 29 U.S.C. § 1132(g)(2). The Trust Agreement also provides that, in an action to recover unpaid or late-paid contributions, the Trustees are entitled to an award of attorneys' fees "equal to the actual amount to be billed to the Trustees by their counsel for work performed. . . ." (Trust Agmt. Art IX, § 3(a).)

11

For the court to award attorneys' fees, Plaintiffs must provide contemporaneous time records, *see Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986), which they have done ("Billing Records," Ex. E to Adler Decl., Dkt. 13-8). The attorneys' fees and costs must also be "reasonable." *See Riley v. City of New York*, No. 10-CV-2513 (MKB), 2015 WL 9592518, at *1 (E.D.N.Y. Dec. 31, 2015).

"[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citations omitted). To calculate the lodestar, the court determines a reasonable hourly rate and a reasonable number of hours. *See Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006); *see also Scharff v. Cty. of Nassau*, 10-CV-4208 (DRH)(GRB), 2016 WL 3166848, at *3 (E.D.N.Y. May 20, 2016), *R&R adopted*, 2016 WL 3172798 (E.D.N.Y. June 6, 2016). "District courts have broad discretion to determine both the reasonable number of compensable hours and the reasonable hourly rate." *Brady*, 455 F. Supp. 2d at 203. The party applying for fees must support the hourly rates it claims with evidence, for example, of counsel's experience and prevailing market rates. *See id.* at 204; *Riley*, 2015 WL 9592518, at *2.

### a. Hourly Rate

To determine a reasonable hourly rate, courts consider the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (citations and internal quotations omitted). The "community" is the "district in which the reviewing court sits." *Scharff*, 2016 WL 3166848, at *4 (*quoting Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011)). "The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The Court must also "bear in mind *all* of the case-specific

12

variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* (emphasis in original). Those factors include the attorney's experience and expertise. *See Brady*, 455 F. Supp. 2d at 204; *Chen v. Cty. of Suffolk*, 927 F. Supp. 2d 58, 71 (E.D.N.Y. 2013). The fee applicant has the burden of justifying the requested rate as reasonable. *See Scharff*, 2016 WL 3166848, at *4.

Plaintiffs seek reimbursement of fees at the following hourly rates: for partner Michael Adler, $325 in 2023, $335 in 2024, and $345 in 2025; and for paralegal Madlen Hazarian, $123.50. (Adler Decl. ¶¶ 36–38; Billing Records.)

Mr. Adler has practiced labor and benefits law for over twenty years and is counsel of record for over 250 ERISA cases. (Adler Decl. ¶ 40.) Ms. Hazarian has been employed with the firm, which exclusively represents labor unions and employee benefit funds, since 2022. (*Id.*)

I find the requested rates to be reasonable. *See Gesualdi v. GWA Mech. Inc.*, No. 24-CV-2049 (MKB)(SIL), 2024 WL 5381426, at *9 (E.D.N.Y. Dec. 5, 2024) (awarding an hourly rate of $335 for Mr. Adler), *R&R adopted*, 2025 WL 32717 (E.D.N.Y. Jan. 6, 2025); *Rubin v. HSBC Bank USA, NA*, No. 20-CV-4566 (FB)(SJB), 2025 WL 248253, at *8 (E.D.N.Y. Jan. 21, 2025) (awarding an hourly rate of $125 for paralegal).

### b. Hours Expended

When calculating the lodestar, "the district court should exclude excessive, redundant or otherwise unnecessary hours. . . ." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Courts reduce the requested hours, for example, when a partner performs tasks more appropriate for an associate. *Finkel*, 2020 WL 7249438, at *4. Courts also routinely reduce requested fee awards when attorneys perform tasks like "review[ing] electronic orders and case management orders, [and] fil[ing] documents on ECF . . . [which] should [be] conducted by a paralegal." *Callari v. Blackman Plumbing Supply, Inc.*, 11-CV-3655 (ADS)(AKT), 2020 WL 2771008 at *12 (E.D.N.Y. May 4, 2020), *R&R*

13

*adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020). Courts "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Plaintiffs' counsel seeks reimbursement for 10.2 hours of attorney time and 8.8 hours of paralegal time. (Billing Records at 7 (ECF Pagination).) Plaintiffs' contemporaneous records demonstrate that Plaintiffs' counsel expended reasonable amounts of time drafting demand letters, communicating with Plaintiffs, preparing the Complaint, and preparing the Motion. (*See* Billing Records; Adler Decl. ¶ 39.) Moreover, I find that Plaintiffs' counsel divided responsibilities appropriately between Mr. Adler and Ms. Hazarian, who, for example, prepared most of the contribution spreadsheets and other exhibits in support of the Motion. (*See* Billing Records.)

Especially given the modest hourly rates, I find these hours expended to be reasonable for this action.

### c. Costs

"The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Monge v. Glen Cove Mansion Hosp., LLC*, No. 18-CV-7229 (SJF)(SIL), 2020 WL 1666460, at *9 (E.D.N.Y. Apr. 2, 2020) (quoting *Volpe v. Nassau County*, No. 12-CV-2416 (JFB)(AKT), 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016)). "Filing fees are recoverable without supporting documentation if verified by the docket." *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 219 (E.D.N.Y. 2019). "Process server fees are also recoverable but must be supported by documentation." *Id.*

Plaintiffs seek reimbursement for litigation costs in the amount of $479, which constitutes the filing fee of $402 and $77 for service of process. (Ex. F to Adler Decl., Dkt. 13-9.) I find these to be reasonable and documented costs for which Plaintiffs are entitled reimbursement.

Accordingly, I respectfully recommend that Plaintiffs be awarded $5,358.30 in attorneys' fees and $479 in costs.

**CONCLUSION**

For the above reasons, I respectfully recommend that the Motion be granted and that Plaintiffs be awarded the following relief:

- $838,335.44 in unpaid contributions;

- $220,807.95 in liquidated damages and $176,379.28 in interest for unpaid contributions;

- $296,264.20 in liquidated damages and $31,751.65 in interest for late-paid contributions;

- $5,358.30 in attorneys' fees and $479 in costs;

I further recommend that the Court issue a permanent injunction requiring Defendant to submit all outstanding remittance reports and to submit to an audit.

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         June 25, 2025

15